■ In the Matter of WILLIAM CROMWELL, Appellant, v BENJAMIN WARD, as Commissioner of Police of New York City, Respondent.—Order and judgment (one paper), Supreme Court, New York County (Martin B. Stecher, J.), entered February 2, 1990, which dismissed the petition in this CPLR article 78 proceeding seeking a judgment (1) vacating respondent's denial of petitioner's request for documents under the Freedom of Information Law (FOIL; Public Officers Law § 84 *et seq.),* (2) granting access to said documents, and (3) awarding compensatory and punitive damages, unanimously re-

versed, on the law and the facts, to the extent appealed from by vacating the judgment as to items 14, 16, 17, 18, and 23 that were requested by petitioner and remanding the matter to the respondent for determination of the disclosure of said items and, if disclosure is denied, specification of the reasons for that determination, without costs.

On December 10, 1983, petitioner was convicted of murder and sentenced to 18 years to life imprisonment. By letters dated April 11, 1988, April 21, 1988, May 14, 1988 and May 21, 1988, petitioner requested approximately 27 documents from the New York City Police Department (NYPD) which he asserted pertained to a homicide investigation which followed a June 16, 1983 incident and arrest. Petitioner identified six police officers, by name and either shield number or precinct, who were allegedly involved in the investigation. The extensive list of requests specified 21 documents sought by title and form number, such as "PD 226-141-Arrest Information Report", "PD 313-152 Complaint Report" and "PD 313-153 Investigating officer's [sic] report."[1] Officers' memo book entries pertaining to this investigation were also requested. In the May 14, 1988 letter, petitioner asserted that the investigation included the interview of a Kyle Robinson who, along with one James Ancrum, was alleged to have been shot on June 16, 1983 on 115th Street in Manhattan at approximately 7:00 P.M.

By letters dated July 8, 1988 and July 17, 1988, petitioner "appealed" the apparent denial of his requests. It was in these letters that, for the first time, petitioner identified the investigation as being "of my arrest on June 16, 1983" at 115th Street and 8th Avenue "for the alleged shooting of Kyle Robinson and James Ancrum."

By letter dated July 18, 1988, respondent requested that petitioner provide the following:

"1. Date and address of incident

"2. Your date of birth

"3. Your N.Y.S.I.D. number."

By letter dated August 9, 1988, respondent, by his Records Access Officer, provided petitioner with a copy of his arrest report for June 16, 1983 and denied his remaining requests. The following reasons, without specificity or particularization, were stated as the basis for the denial:

"If the Police Department maintains such records, the records if disclosed would constitute an unwarranted invasion

---

1. The correctness of these form numbers and titles is not at issue.

of personal privacy under the provisions of subdivision two of section eighty-nine of the law * * * are compiled for law enforcement purposes and * * * if disclosed, would:

"(i) interfere with law enforcement investigations or judicial proceedings;

"(ii) deprive a person of a right to a fair trial or impartial adjudication;

"(iii) identify a confidential source or disclose confidential information relating to a criminal investigation or;

"(iv) reveal criminal investigative techniques or procedures, except routine techniques and procedures * * * are inter-agency or intra-agency materials which are *not:*

"(i) statistical or factual tabulations or data;

"(ii) instructions to staff that affect the public or

"(iii) final agency policy or determination".

By letter dated February 28, 1989, respondent's assistant deputy commissioner for legal matters responded to petitioner's appeals in pertinent part as follows: "Of the records you listed, my staff was able to locate and retrieve the Arrest Report, Complaint Report and Complaint Follow Ups. I have enclosed redacted copies of these documents with the exception of those Follow Ups that indicate the identity and/or contain the statements of persons who were questioned by the investigators [Public Officers Law § 87 (2) (e)], since disclosure would constitute an invasion of privacy [§ 87 (2) (b)], could endanger a person(s) safety [§ 87 (2) (f)] and are intra-agency material [§ 87 (2) (g)]. I am denying disclosure of the memo book entries since they are not agency records as defined by F.O.I.L. but since *[sic]* the books are retained by the officers and not the Police Department upon separation. In the alternative, such material is exempt from disclosure for the reasons contained above."

Dissatisfied with the result, petitioner commenced this CPLR article 78 proceeding, seeking, *inter alia,* access to the records because they were neither turned over to the defense nor presented to the jury and allegedly they would demonstrate his innocence. Respondent's answer to the petition, *inter alia,* alleged that petitioner had been provided with copies of all of the documents that he was entitled to under FOIL and that the respondent's determination was not arbitrary or capricious. Respondent's counsel relied upon the grounds set forth by the respondent and also responded to the list of documents requested *seriatim.* The records, as stated by the IAS court, were "(a) not prepared with respect to petition-

er's arrest and subsequent investigation, (b) were destroyed under the periodic purging of police files, (c) fail to adequately describe the material sought as a date, author or incident is not identified or (d) records do not exist."

The IAS court denied and dismissed the petition, finding that the respondent's determination was rationally based. It held that statutory exemptions were properly utilized and reasons were fully identified for each denial. This appeal followed.

By virtue of petitioner's brief on appeal, the issue before this court is whether respondent properly denied access to the following documents:

"Item 14. PD321-081 Forensic Report

"Item 16. PD439-156 Investigations Daily Activity Report

"Item 17. PD439-1511 Investigator's Daily Report

"Item 18. PD373-142 Physical Description Sheet

"Item 23. PD301-156 Tractor Trailor [sic] Incident"[2]

FOIL, as codified in section 87 of the Public Officers Law, states in pertinent part:

"2. Each agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that:

"(a) are specifically exempted from disclosure by state or federal statute;

"(b) if disclosed would constitute an unwarranted invasion of personal privacy under the provisions of subdivision two of section eighty-nine of this article * * *

"(e) are compiled for law enforcement purposes and which, if disclosed, would:

"i. interfere with law enforcement investigations or judicial proceedings;

"ii. deprive a person of a right to a fair trial or impartial adjudication;

"iii. identify a confidential source or disclose confidential information relating to a criminal investigation; or

---

2. Petitioner contends that the police officers who testified at his trial that they saw him shoot into the store where the incident occurred could not have seen him because their view was blocked by an illegally parked tractor trailer. He further alleges that he witnessed the summons for that infraction being issued. This is the basis for requesting item 23. Respondent contends on appeal that this document cannot be located and if created, would have been destroyed pursuant to department regulations in 1988.

"iv. reveal criminal investigative techniques or procedures, except routine techniques and procedures;

"(f) if disclosed would endanger the life or safety of any person;

"(g) are inter-agency or intra-agency materials which are not:

"i. statistical or factual tabulations or data;

"ii. instructions to staff that affect the public;

"iii. final agency policy or determinations".

Despite this statutory requirement, prior to this proceeding, the most specific response petitioner was given to his requests was in the February 28, 1989 letter from the assistant deputy commissioner for legal matters. This response implied that items 14, 16, 17, 18 and 23 could not be located. They were not directly addressed and applicable exemptions under FOIL were not identified. While it is contended that items 14, 16, 17 and 18 could not be located because of vagueness as to the author of the document and the date and location of the incident, we note that petitioner did provide the names of six police officers who were allegedly involved in the investigation (likely authors) and the date and location of the incident on several occasions. Significantly, by letter dated July 18, 1988, NYPD requested only the date and address of the incident and petitioner's N.Y.S.I.D. number and birth date. Also, petitioner did identify the specific documents that he wished to receive. As such, the records were reasonably described by petitioner so that a search could be made by the agency *(see,* Public Officers Law § 89 [3]; *Matter of Farbman & Sons v New York City Health & Hosps. Corp.,* 62 NY2d 75, 83 [1984]; *Matter of Konigsberg v Coughlin,* 68 NY2d 245 [1986]). In addition, this was not a situation where petitioner was demanding that the agency develop a new system for identifying and retrieving documents and, thereby, do his research for him *(see, Matter of Wattenmaker v New York State Employees' Retirement Sys.,* 95 AD2d 910 [1983]). Indeed, the record indicates that some documents were located after the petition was filed. Moreover, the record reveals that respondent failed to " 'articulate particularized and specific justification' " and "establish that 'the material requested falls squarely within the ambit of [the] statutory exemptions' " *(Matter of Farbman & Sons v New York City Health & Hosps. Corp., supra,* at 83) as to these items.

Consequently, the judgment of the IAS court is reversed with respect to items 14, 16, 17, 18 and 23 and the matter is

remanded for a determination by the respondent as to whether these records are to be disclosed and if disclosure is denied, the basis of that denial must be stated with particularity and specificity *(see, Matter of Burton v Slade,* 166 AD2d 352 [1990]). Concur—Sullivan, J. P., Carro, Ross, Asch and Smith, JJ.